IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KRISTY SWANEY, | § § | |
| *Plaintiff,* | § § § | 5:22-CV-01094-FB-RBF |
| vs. | § § § | |
| JOHN DOE, SHUNTONG TRANSPORTATION, LLC, | § § § § | |
| *Defendants.* | § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' Motion for Summary Judgment. *See* Dkt. No. 36. All pretrial matters in this action have been referred for resolution, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 5. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Defendants' Motion should be **DENIED IN PART** and **GRANTED IN PART**.

**Factual and Procedural Background**

On May 17, 2022, Kristy Swaney sued Shuntong Transportation and the driver of a Shuntong-owned tractor-trailer, identified at that time as John Doe, in the 285th District Court of Bexar County. *See* Dkt. No. 1, Exhibit B. On October 6, 2022, Defendant Shuntong removed the case to federal court. *See* Dkt. No. 1. Plaintiff Swaney did not object to the removal.

On or about February 18, 2022, Swaney was traveling west on Loop 410 in San Antonio, Texas, towards the Loop 410 and Interstate-10 interchange and preparing to merge into the next

left lane to continue on Loop 410. Dkt. No. 38 at ¶ 1. A tractor-trailer, which was traveling in the lane to Swaney's left, suddenly crossed into Swaney's lane, striking Swaney's vehicle. *Id.* Swaney's chest hit the steering wheel of her car, and her car sustained damage to its left side. *Id.* The tractor-trailer continued on the freeway, taking Interstate-10 north. *Id.* at ¶ 2. Swaney followed the tractor-trailer, signaling to the driver, and the driver eventually pulled over. *Id.*

Swaney and the tractor-trailer's driver exited their vehicles and briefly spoke. *Id.* The driver said, "Everything is going to be all right," and Swaney replied, "I need to call the police," to which the driver replied, "[N]o, no, no." Dkt. No. 38, Ex. 1 ("Swaney Depo.") at 63:1-3. Swaney then informed the driver, "Well, I need to see your license and insurance," prompting the driver to return to the tractor-trailer's cab, presumably to retrieve his wallet. *Id.* at 63:3-5. Swaney returned to her car, to avoid standing on the side of the freeway, but was shortly joined by the tractor-trailer driver, who jumped into her car, opened his wallet, and started counting money out loud. *Id.* at 63:5-8. The driver then withdrew all the money from his wallet (which turned out to be $873), tossed it at Swaney, said, "Here's the money," exited her vehicle, returned to the cab of the tractor-trailer, and drove off. *Id.* at 63:8-10; 65:10-11; 66:20-22.

Swaney initially observed the driver of the tractor-trailer to be Korean and shorter than her five-foot four frame,[1] with short dark hair. *Id.* at 38:20-21. She confirmed in her deposition that the driver had been Asian and spoke with an accent, but that she didn't know whether he was Korean. *Id.* at 160:11-21. While inside Swaney's car, on her prompting, the driver told Swaney that his name was "Rick." *Id.* at 65:15-23. After she had stopped her car to talk with the driver, Swaney at some point took two photos: one of a license plate on the vehicle and one of the passenger door, where some identifying information on the tractor-trailer's company was

---

[1] Swaney's medical records state she is five-feet-and-three-inches tall. *See* Resp., Ex. 11.

located. *See id.* at 58:4-7. She also wrote down the information that was on the passenger door, including "Shuntong motors, the cab number, some sort of other kind of number." *Id.* at 38:3-8. Swaney testified that the writing on the passenger door was black in color. *Id.* at 30:21-23.

The next day, Swaney reported the incident to the police via 911. *See* Dkt. No. 36, Ex. 2, ("Incident Report"). According to the Incident Report, Swaney told the 911 dispatcher that a silver and black 18-wheeler, identified as "Shun Cung Motor Transport" (as recorded by the dispatcher), with a specified license plate,[2] had hit her the night before, around 7:30 or 7:40 in the evening. *Id.* at 2; Swaney Depo. at 27:16-24. Swaney told the responding officer that "she was in an accident . . . as she was on the flyover on 410/IH 10 . . . [going] eastbound and on the flyover to go northbound on IH10 when [the tractor-trailer] merged [into] her lane and caused damage." Incident Report at 2. According to the Incident Report, which was created February 19, 2022, Swaney told the responding officer that the accident had taken place on January 19, 2022. *Id.* She later confirmed at her deposition that this was a mistake, and the correct date should have been February 18, 2022. Swaney Depo. at 35:1-12. She also confirmed that, though the responding officer had written down that Swaney received $871 from the driver, she had received $873. *Id.* at 35:13-17.

At her deposition, Swaney stated that she told the 911 dispatcher the tractor-trailer was red and silver, specifically that the cab (the front portion of the tractor-trailer) was red, and confirmed that the dispatcher recorded incorrect information. Swaney Depo. at 28-30. Swaney

---

[2] The Court lacks clarity on whether Plaintiff knows the license plate number of the tractor-trailer that hit her car. Swaney stated in her deposition she had a photo of it that she passed on to her lawyer and that she told the 911 dispatcher the license plate number. No photo has been produced to the Court and the Incident Report is redacted where the reported license plate of the tractor-trailer would potentially be listed. The inconsistency is not fatal to Plaintiff's claims at this stage.

stated that she believed the back of the tractor-trailer, the trailer, was silver, but also that she just couldn't remember. *Id.* at 30:3-8.

Swaney sought and paid for medical treatment for an injury arising from the accident. *See* Resp., Exs. 10-13. One of her providers recommended in July 2022 and November 2022 that she undergo "a repeat rhizotomy within six months to two years for continued relief of symptoms." *Id.*, Ex. 13 at 9, 16.

Xianquang Huang is the owner of and corporate representative for Shuntong Transportation, LLC—a company that transports dry goods, remodeling materials, auto parts, and other goods—to locations around the United States for a variety of clients. Dkt. No. 38, Ex. 2 ("Huang Depo.") at 19-21. At any given time, Shuntong Transportation has 1-3 employees: Huang and one or more drivers. *Id.* at 29-30. Shuntong Transportation currently has two tractor-trailers in its fleet, one of which the company owned at the time of Swaney's accident as its sole tractor-trailer. *Id.* at 56:21-57:6. Huang testified at his deposition that the tractor-trailer Shuntong owned at the time of Plaintiff's accident had a blue cab and has never been painted. *Id.* at 58:3-5, 63:2-4. Huang also provided photos of the tractor-trailer, reportedly captured when he first obtained the tractor-trailer, before Plaintiff's accident, though he cannot recall exactly when they were taken.[3] *Id.* at 59:25-60:12, 61:20-22. The tractor-trailer in the photos has a blue cab, with white lettering on its passenger door that reads, "SHUNTONG TRANSPORTATION," and includes identification numbers, such as the tractor-trailer's U.S. DOT identifier and VIN. Dkt. No. 38, Ex. 5B.

Huang gives his drivers additional compensation if they complete their trips safely, as well as up to $2,000 as an annual bonus to drivers who complete their work safely all year. *Id.* at

---

[3] Defendants did not provide any documentation to corroborate when or where the photos were taken, nor is it obvious from the face of the photos.

4

81:23-85:17. At the time of Swaney's accident, Khigang Lei was one of Shuntong Transportation's drivers. *Id.* at 31:1-4. Lei testified that he is five-feet and seven inches tall, and his state-issued commercial driver's license states as such. Lei Depo. at 24:14-16; Resp., Ex. 6-A. Lei, a Chinese immigrant to the United States, does not have strong English-speaking skills and utilized a translator at his deposition. Lei Depo. at 39:2-7; *id.* at 40:22-25. Lei testified that Huang didn't inform him of the safety bonuses. Dkt. No. 38, Ex. 3 ("Lei Depo.") at 62:11-15. Lei had recently started working for Shuntong in February 2022 and departed the company in March 2022. Huang Depo. at 31:12-32:6; Lei Depo. at 21:11-14. Huang testified that Lei resigned from his position with the company because of a family matter, saying, "I think they had to go traveling." Huang Depo. at 34:7-20. Lei testified, however, that Huang wanted him to drive for longer than the legal 11-hour limit and Huang fired him when Lei would not agree. Lei Depo. at 31:6-32:12.

On February 18, 2022, Lei drove the Shuntong tractor-trailer through San Antonio to return the tractor-trailer to Los Angeles, where the company is based. *See* Huang Depo. at 57:24-58:2; Lei Depo. at 52:11-53:11. Lei testified that the tractor-trailer he drove was blue. *Id.* at 38:12-17. Lei's position required him to maintain a handwritten log of his driving hours, including how long he drove before breaks and where his breaks took place, in compliance with federal law. *Id.* at 53:14-54:2, 54:17-23. Lei understood that if the log showed he drove for more than 11 hours in a day, then he and his employer could get in trouble, and that it was illegal to "fudge" the numbers on the log. *Id.* at 54:3-16. Lei's driver's log from February 18, 2022, reports him departing Grand Bay, Alabama, at 5:00 A.M. and arriving in Lafayette, Louisiana, around 8:15 A.M. Mot., Ex. 5A ("Driver's Log") at 3. Lei departed Lafayette around 8:45 A.M., took a break in Beaumont, Texas, from 10:30 A.M. until 11:00 A.M., and drove for five and a

half hours before arriving in Harper, Texas at 4:30 P.M. and resting for the remaining portion of the day. *Id.* It is undisputed that his travel from Beaumont to Harper took him through San Antonio on Interstate 10. *Id.* at 59:2-4; Huang Depo. at 57:24-58:2. Lei recalled he would have been in San Antonio around 3:00 P.M. Lei Depo. at 59:5-8.

After Swaney's lawsuit was filed and Shuntong received a notice from their insurance company about the alleged accident, Huang asked Lei whether he'd had an accident in Texas, to which Lei denied. Huang Depo. at 36:3-18. Lei also testified that he was not in an accident during his mid-February trip. Lei Depo. at 79:6-8. Huang also testified that Lei returned the tractor-trailer without any scratches or damages after his mid-February 2022 trip. Huang Depo. at 55:15-23.

In April 2023, Shuntong served supplemental interrogatories that identified Khigang Lei as the alleged driver of the tractor-trailer. *See* Dkt. No. 23. Plaintiff then filed her First Amended Complaint on May 15, 2023, naming Khigang Lei as the driver of the tractor-trailer. *See* Dkt. No. 24. Plaintiff's First Amended Complaint brings a variety of negligence claims against defendants:

- Against Defendant Lei for negligence and/or negligence per se for one or more of the following: failure to control vehicle's speed, failure to operate the vehicle safely, failure to keep a proper lookout, failure to timely apply brakes, failure to maintain a safe distance, failure to maintain an awareness of his surroundings, changing lanes and merging when unsafe, violating applicable local, state, and federal laws and/or regulations, including a variety of Texas Transportation Code statues, and other acts deemed negligent;

6

- Against Defendant Shuntong Transportation for vicarious liability for Defendant Lei's negligent acts and omissions under the doctrine of *respondeat superior*;

- Against Defendant Shuntong for direct liability for negligence and/or negligence per se for one or more of the following: negligently entrusting a motor vehicle to an incompetent driver, negligently hiring and/or retaining employees, negligently training and/or supervising employees, violating applicable local, state, and federal laws and/or regulations, and other acts deemed negligent.

*Id.* at ¶¶ 9-10. Plaintiff alleges damages for past and future medical expenses, past and future pain, suffering, and mental anguish, past and future physical impairment, past and future physical disfigurement, and past lost wages and future loss of earning capacity. *Id.* at ¶ 12.

On March 22, 2024, Defendants filed a Motion for Summary Judgment, Dkt. No. 36 ("Mot."). *See also* Dkt. No. 38, Plaintiff's Response ("Resp.") and Dkt. No. 40, Defendants' Reply ("Reply"). Defendants' Motion addresses all of Plaintiff's claims against Defendants, including both direct and vicarious liability theories of negligence. The Motion also challenges Plaintiff's claims for future damages.

## Analysis

### A.   Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to

support an essential element of the nonmovant's claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a

motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

Defendants' Reply challenges Plaintiff's affidavit that accompanies her Response and requests that the Court disregard portions of the affidavit when considering Defendant's Motion. *See* Reply at 4-6; Resp. Ex. 6. Defendants "object to portions of Plaintiff's affidavit . . . which contradict her own prior sworn testimony, are not based on her personal knowledge, and are conclusory." *Id.* at 4. Affidavits used in summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). To the extent that portions of Plaintiff's affidavit contradict her prior testimony, that conflict is more appropriately addressed at trial through cross-examination. Moreover, the Court finds that upon reviewing Plaintiff's affidavit it does not contain any matters necessary to the below recommendations and, as such, the Court need not consider any portions of Plaintiff's affidavit that may not have been based on personal knowledge or are conclusory.

**B.     Defendants Are Not Entitled to Summary Judgment on Plaintiff's Direct Negligence Claims.**

Plaintiff brings direct negligence claims against Lei and vicarious liability claims for such negligence against Shuntong. "Under Texas law, the elements of a negligence claim are (1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach*." Sports Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 466 (5th Cir. 2003) (internal citation omitted). "[T]o prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the worker (1) was an employee and (2) was acting in the course and scope of his employment."

9

*Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (internal citation omitted).

Defendants argue that summary judgment in their favor on all claims is appropriate because Swaney misidentifies Shuntong's tractor-trailer and its driver, Lei, as the tractor-trailer and driver who hit her car in February 2022. A mistaken identity would mean that Shuntong and Lei owed Swaney no duty, nor could have breached such a duty, because Shuntong's tractor-trailer and Lei were not present when Swaney's car was damaged. But the identity of the driver and tractor-trailer are disputed issues of fact; summary judgment for Defendants is therefore not warranted.

  **1.** *Defendants misstate Plaintiff's burden at summary judgment.* Defendants argue, "[T]o avoid summary judgment, Swaney must demonstrate that [the] truck owned by Shuntong and operated by Lei was the vehicle that collided with her vehicle and caused the damages." Mot. at 2. As the non-movant at summary judgment, Swaney must only demonstrate there is a disputed question of fact on a material issue. Swaney need not definitively prove at summary judgment that Shuntong's tractor-trailer, driven by Lei, was the vehicle that hit her car; she need only demonstrate that there is a disputed fact question presented, which she has done.

  **2.** *There is a question of fact on whether Shuntong's tractor-trailer was the one that collided with Plaintiff's vehicle.* Defendants focus on three key issues to argue that Shuntong's tractor-trailer couldn't have been the vehicle that struck Swaney's car in February 2022: the color of the tractor-trailer, the color of the text on the tractor-trailer's door, and the location of the Shuntong tractor-trailer on the day in question. None of these issues are conclusive.

***There is a disputed fact issue on the identity of the tractor-trailer, as informed by its color.*** According to Huang's deposition testimony, Shuntong Transportation only owned a "blue" tractor-trailer on the day of Swaney's collision, and that tractor-trailer has never been painted a different color. Huang Depo. at 58:3-5, 63:2-4. Lei testified that he drove a blue tractor-trailer on the date of Plaintiff's collision. Lei Depo. at 38:12-17. The 911 dispatcher recorded Swaney as identifying the tractor-trailer as "silver and black," and Swaney testified that this was a mistake, as she remembers the cab of the vehicle being red. Incident Report at 2; Swaney Depo. at 28-30. Defendants would have the Court discredit Swaney's recollection of the collision, as it is inconsistent with the color of Shuntong's tractor-trailer. But the possible inconsistencies in Swaney's memory of the color are more appropriate for cross-examination than for summary judgment. More important, these inconsistencies are part of the disputed issue of fact, namely the identity of the tractor-trailer and driver.

Further, Defendants have not presented any evidence, beyond Mr. Huang's deposition testimony, that Shuntong only owned a blue tractor-trailer in 2022. Business records or other current or former employee testimony, for example, could corroborate this important self-interested assertion. Defendant Shuntong only produced undated photos of a blue tractor-trailer. *See* Mot., Ex. 5B. The Court may not assess credibility at the summary judgment stage, and, in examining the evidence in the light most favorable to the non-movant, does not have reason to credit Huang's version over Swaney's. Nor does the possibility that Swaney misremembers the color of the tractor-trailer render it impossible that Shuntong's tractor-trailer was involved.

***Much the same is true as to the disputed fact issue over the color of the lettering on the side of the cab.*** Swaney testified that the lettering on the side of the cab, where she obtained Shuntong's name, was black. Swaney Depo. at 30:21-23. In contrast, photos of

11

Shuntong's blue tractor-trailer, which purportedly was the tractor-trailer Lei drove in February 2022, show white lettering on the passenger door. *See* Mot., Ex. 5B. For the same reasons that the purported color of the tractor-trailer is not enough to demonstrate there is no fact question on the tractor-trailer's identity, the color of the text on the side of the door is not dispositive for summary judgment either.

*__Further, a question of disputed fact remains on the location of Defendant Shuntong's tractor-trailer on the date of the collision.__* Swaney alleges and testified that the collision occurred somewhere around 7:30 PM on February 18, 2022. Incident Report at 2; Swaney Depo. at 27:16-24. Lei's driver log, which he was required to update every day with his driving time, break time, and sleep time, shows that Lei and the Shuntong tractor-trailer were in Harper, Texas, around the time of Swaney's collision. Driver's Log at 3. While Lei had to pass through San Antonio on the way to Harper, Lei's driver log suggests he passed through San Antonio several hours before Swaney's collision. *Id.* The Court emphasizes that the driver's log is self-reported. Defendants have not prevented evidence that corroborates the representations in the driver's log other than their own deposition testimony or otherwise persuaded the Court of the veracity of the driver's log such that it entitles them to summary judgment.

*__Finally, a few other facts in the record show there is a disputed question of fact on the tractor-trailer's identity.__* Swaney told the 911 dispatcher that the tractor-trailer who hit her car said "Shun Cung Motor Transport" (as recorded by the dispatcher), on its side. *See* Incident Report at 2. Defendants' Motion does not account for how this could have been possible if Shuntong's tractor-trailer was not present. In addition, Huang testified that the Shuntong tractor-trailer returned from Lei's February cross-country trip without any signs of damage or scratches. Huang Depo. at 55:15-23. For the same reasons as above, this does not prevent a fact

issue on the tractor-trailer's identity. Defendants did not provide photos of the truck captured shortly after its February 2022 journey or otherwise corroborate the testimony of Huang as an interested witness.

**3.**     *There is a disputed question of fact concerning the driver's identity.* Defendants additionally claim summary judgment in their favor is appropriate because Plaintiff has incorrectly identified Lei as the driver of the tractor-trailer who hit her car.

Defendants also rely on the driver's log to challenge Plaintiff's identification of the driver, as the driver's log would show that *Lei* was not present in San Antonio at the time of the collision. For the same reasons as above, the driver's log does not entitle Defendants to summary judgment.

Plaintiff describes the driver of the tractor-trailer as Asian or Korean, with short, dark hair, an accent, and shorter than her five-feet-and-four-inch frame. Swaney Depo. at 38:20-21, 160:11-17. Defendant Lei testified that he is five-feet-and-seven-inches tall, and his state-issued commercial driver's license, presumably based on his self-reporting to the state, declares the same. Lei Depo. at 24:14-16; Resp., Ex. 6-A. Defendant Lei is also a Chinese immigrant to the United States who required the use of a translator at his deposition and has an admittedly weak grasp of the English language. *See generally* Lei Depo.; *id.* at 39:2-7, 40:22-25.

Defendant Lei's representations about his height, as well as Plaintiff's representations about her own height and her height relative to the alleged driver's, were primarily presented through their personal deposition testimony. The only outside evidence available to the Court regarding the physical size of either party is Plaintiff Swaney's medical records, which state she was five-feet-and-three-inches tall on March 18, 2022, *see* Resp., Ex. 11, and Lei's driver's license. *See* Resp., Ex. 6-A. Plaintiff Swaney's allegations as to the driver's race and hair,

13

however, could describe Defendant Lei. Further, Defendant Lei is not a strong English speaker, as evident from the translator present for his deposition, nor was the alleged driver. Defendants provide no information that would compel the Court to value the implications of the mismatch in alleged height over these other matching characteristics. For example, Defendants did not provide information on the visibility conditions at 7:30 PM on February 18, 2022, Plaintiff Swaney's eyesight strength, or an external confirmation of Defendant Lei's reported height.

        **4.**    *The open questions on identity prevent summary judgment on causation.*
Defendants argue, "The possibility that an accident may have contributed to claimed injuries is not sufficient to show causation; a reasonable probability is required." Mot. at 12. While this may be the appropriate burden for Plaintiff to bear at trial, it is certainly not her burden as the non-movant at summary judgment. Defendants rely on their same identity theories to challenge Plaintiff's ability to demonstrate causation at trial but are not entitled to summary judgment on this element of negligence either.

        **C.**    **Defendant Shungtong Transportation Is Entitled to Summary Judgment on Plaintiff's Direct Negligence Claims.**

Defendant Shungtong argues that Plaintiff cannot show that a reasonable jury could find in her favor on her direct negligence claims against the company. Mot. at 13-16. In her Response, Plaintiff concedes that she has insufficient evidence to prove her negligent entrustment, negligent hiring/retention/supervision/training, and failure to maintain claims against Defendant Shungtong. *See* Resp. at 10, n. 56. Summary judgment should therefore be granted to Defendant Shungtong on Plaintiff's direct negligence claims brought against the company.

**D.     Defendants Are Not Entitled to Summary Judgment on Damages.**

Defendants argue that Plaintiff can show no reasonably certain future damages, specifically as to her claims for future medical expenses, lost earning capacity, disfigurement, and impairment. *See* Mot. at 13. Defendants, however, only specifically address future medical expenses and lost earning capacity. They make no argument that they are entitled to summary judgment on the other two categories of future damages.

      **1.**     *Defendants appear to demand conclusive proof by Plaintiff as to her future damages.* Defendants argue, "Plaintiff must still present some evidence that future damages (impairment, medical expenses and/or lost earning capacity) are reasonably probable." Mot. at 13. At the summary judgment stage, Plaintiffs need not meet their trial burden as to damages; they must demonstrate the existence of a disputed fact question to defeat a motion for summary judgment. To the extent Defendants attempt to argue that Plaintiff cannot show reasonably certain damages as a matter of law, that argument appears premature as it is not based on a complete lack of damages evidence but rather on Defendants' characterization of the strength of Plaintiff's damages evidence. Accordingly, Defendants' citation to authorities addressing the evidentiary standard for future medical damages and the legal sufficiency of evidence *in a post-trial posture* is not particularly helpful to their arguments. *See, respectively, Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 348 (Tex. 2015).

      **2.**     *Plaintiff has shown a question of fact exists on her future medical expenses and lost earning capacity damages.* "The award of future medical damages lies within the discretion of the factfinder . . . [N]o precise evidence is required . . . [T]he factfinder may award future medical damages based upon the nature of the injury, the medical care rendered

15

prior to trial, and the condition of the injured party at the time of trial." *Ibrahim v. Young*, 253 S.W.3d 790, 808-09 (Tex. App.—Eastland 2008, pet. denied). In *Young*, the plaintiff "testified without objection that she would need future surgery. That [was] some evidence that she will miss more work in the future." *Id.* at 808. Here, Plaintiff invokes evidence about her injury, Swaney Depo. at 68:19-25; her medical records, Resp., Exs. 11, 13; the costs of past medical procedures for the injury, *Id.*, Ex. 10; and the recommendation of one of her providers from July 2022 and November 2022 that she undergo "a repeat rhizotomy within six months to two years for continued relief of symptoms." *Id.*, Ex. 13 at 9, 16.

Defendants' support for their challenge of Plaintiff's future damages claims is as follows: "Plaintiff associated pain on her left side from the neck down to her shoulder. However, [] no doctor has advised her that she needs future surgery or that she is unable to work at her full capacity. Therefore, Plaintiff can present no evidence that a February 18, 2022, collision was the cause of any future disfigurement, medical expenses or lost earning capacity damages." Mot. at 13. Defendants incorrectly presume, without providing sufficient supporting authority, that future medical expenses would only arise from surgical procedures and that a doctor's opinion is mandatory to demonstrate an inability to work at full capacity. *Cf. Ibrahim*, 253 S.W.3d at 808-09.

**3.**   *Defendants did not properly present a challenge to Plaintiff's future mental anguish.* Defendants' Reply lists damages to which they are entitled to summary judgment, including Plaintiff's future mental anguish damages. Reply at 8-9. But Defendants' Motion did not include an argument or even a statement suggesting a challenge to Plaintiff's mental anguish damages. *See* Mot. at 18-19. Plaintiff's future mental anguish damages are therefore not properly before this Court for summary judgment purposes.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment, Dkt. No. 36, be **DENIED IN PART** and **GRANTED IN PART**. Defendants' Motion should be **DENIED** as to Plaintiff's direct negligence claims against Defendant Lei, vicarious liability claims against Defendant Shuntong, and future damages claims. Defendants' Motion should be **GRANTED** as to Plaintiff's direct negligence claims against Defendant Shuntong.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely

file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

SIGNED this 27th day of February, 2025.

                                            RICHARD B. FARRER
                                            UNITED STATES MAGISTRATE JUDGE